Allison Whitehill (036339)
Todd Feltus (0109076)
Katie Derrig (037110)
LEWIS ROCA ROTHGERBER CHRISTIE LLP
201 East Washington Street, Suite 1200
Phoenix, AZ 85004
Tel: (602) 262-5311
Fax: (602) 262-5747
awhitehill@lewisroca.com
tfeltus@lewisroca.com
kderrig@lewisroca.com

Justin W. Bernick*
Danielle Desaulniers Stempel*
Michael J. West*
HOGAN LOVELLS US LLP
Columbia Square
555 Thirteenth Street, NW
Washington, DC 20004
Tel: (202) 637-5600
Fax: (202) 637-5910
justin.bernick@hoganlovells.com
danielle.stempel@hoganlovells.com
michael.west@hoganlovells.com

(*Additional Counsel for Plaintiffs Listed on the
Following Page*)

(*Admitted pro hac vice*)

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| P.C.J., on his own behalf and on behalf of his minor child, M.C.J.; O.P.V., on his own behalf and on behalf of his minor child, T.P.C.; <br><br> Plaintiffs, <br><br> v. <br><br> United States of America, <br><br> Defendant. | No. CV 23-00780-PHX-DJH <br><br> **PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS** <br> **(Oral Argument Requested)** |

Alicia J. Paller*
Dana A. Raphael*
Melissa Giangrande*
HOGAN LOVELLS US LLP
Columbia Square
555 Thirteenth Street, NW
Washington, DC 20004
Tel: (202) 637-5600
Fax: (202) 637-5910
alicia.paller@hoganlovells.com
dana.raphael@hoganlovells.com
melissa.giangrande@hoganlovells.com

David A. Willner*
HOGAN LOVELLS US LLP
2 North Cascade Ave, Suite 1300
Colorado Springs, CO 80903
Tel: (719) 448-5918
Fax: (719) 448-5922
david.willner@hoganlovells.com

Javier Hidalgo*
REFUGEE AND IMMIGRANT CENTER FOR EDUCATION AND LEGAL SERVICES (RAICES)
1305 N. Flores Street
San Antonio, TX 78212
Tel: (210) 538-7382
Fax: (210) 634-1279
javier.hidalgo@raicestexas.org


(*Admitted pro hac vice)

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# <u>TABLE OF CONTENTS</u>

**Page**

TABLE OF AUTHORITIES ................................................................................ ii

INTRODUCTION ........................................................................................... 1

BACKGROUND ............................................................................................. 3

    A.    The Family Separation Policy ................................................................ 3

    B.    The Separations at Issue Here ................................................................ 4

STANDARD OF REVIEW ............................................................................... 5

ARGUMENT .................................................................................................. 5

    I.    Plaintiffs' Claims Are Permitted Under the Federal Tort Claims Act. ................................................................................................... 6

        A.    The Complaint Does Not Allege Systemic Tort Claims ...................... 6

        B.    The Discretionary Function Exception Does Not Apply Here ........................................................................................... 8

            1.    Defendant's Conduct Was Not Discretionary ............................. 8

            2.    Defendant's Conduct Did Not Implement Policy Considerations ............................................................. 11

        C.    The Due Care Exception Does Not Apply Here .................................. 16

        D.    Plaintiffs' Tort Claims Satisfy The Private-Person-Analogue Inquiry ................................................................ 19

        E.    Plaintiffs Are Not Seeking Relief Against Independent Contractors For Plaintiff-Children's Time In ORR Custody ............... 22

    II.    Plaintiffs' Claims Survive Rule 12(b)(6) ........................................... 23

        A.    Plaintiffs Sufficiently Alleged That Defendant Committed IIED ........................................................................... 23

        B.    Plaintiffs Sufficiently Alleged That Defendant Was Negligent ........................................................................... 25

CONCLUSION .............................................................................................. 27

i

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**CASES:**

*A.E.S.E. v. United States*,
  No. 21-cv-0569 RB-GBW, 2022 WL 4289930 (D.N.M. Sept. 16, 2022).................... 16

*A.F.P. v. United States*,
  No. 1:21-cv-00780-DAD-EPG, 2022 WL 2704570 (E.D. Cal. July 11,
  2022) ........................................................................................................ 6, 9, 15, 16

*A.I.I.L. v. Sessions*,
  No. CV-19-00481-TUC-JCH, 2022 WL 992543 (D. Ariz.
  Mar. 31, 2022)............................................................................................................ 9, 20

*A.P.F. v. United States*,
  492 F. Supp. 3d 989 (D. Ariz. 2020) ...................................................................... *passim*

*Allen v. Arizona Dep't of Corr.*,
  No. 1 CA-CV 07-0242, 2009 WL 2382026 (Ariz. Ct. App. Aug. 4, 2009) ................ 24

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009).................................................................................................. 5, 23

*B.A.D.J. v. United States*,
  No. CV-21-00215-PHX-SMB, 2022 WL 11631016 (D. Ariz. Sept. 30,
  2022) ........................................................................................................................*passim*

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)......................................................................................................... 5

*Berkovitz v. United States*,
  486 U.S. 531 (1988)....................................................................................................... 11

*Bhuiyan v. United States*,
  772 F. App'x 564 (9th Cir. 2019) ........................................................................... 21, 22

*Borquez v. United States*,
  773 F.2d 1050 (9th Cir. 1985) ...................................................................................... 19

*Bunikyte v. Chertoff*,
  No. A-07-CA-164-SS, 2007 WL 1074070 (W.D. Tex. Apr. 9, 2007) ........................ 17

ii

## TABLE OF AUTHORITIES—Continued

**Page(s)**

*Butz v. Economou*,
  438 U.S. 478, 404 (1978). ........................................................................... 11

*C.D.A. v. United States*,
  No. CV 21-469, 2023 WL 2666064 (E.D. Pa. Mar. 28, 2023) .................................... 25

*C.M. v. United States*,
  No. CV-19-05217-PHX-SRB, 2020 WL 1698191 (D. Ariz. Mar. 30,
  2020) ..........................................................................................................*passim*

*C.M. v. United States*,
  Nos. CV-19-05217-PHX-SRB, CV-20-00065-PHX-SRB, 2023 WL
  7102132 (D. Ariz. Oct. 24, 2023) .......................................................................*passim*

*Caban v. United States*,
  728 F.2d 68 (2d Cir. 1984)............................................................................. 25

*Citizen Publ'g Co. v. Miller*,
  115 P.3d 107 (Ariz. 2005)............................................................................. 23

*Crawford v. City of Mesa*,
  No. CV-13-00303-PHX-GMS, 2014 WL 2930787 (D. Ariz. June 30,
  2014) ................................................................................................... 23, 24

*D.J.C.V. v. U.S. I.C.E.*,
  No. 18 Civ. 9115 (AKH), 2018 WL 10436675 (S.D.N.Y. Oct. 15, 2018)................. 13

*Delta Sav. Bank v. United States*,
  265 F.3d 1017 (9th Cir. 2001) ........................................................................ 27

*DeMontiney v. Desert Manor Convalescent Ctr. Inc.*,
  695 P.2d 255 (Ariz. 1985).............................................................................. 26

*Denson v. United States*,
  574 F.3d 1318 (11th Cir. 2009). ...................................................................... 11

*Dugard v. United States*,
  835 F.3d 915 (9th Cir. 2016) ...................................................................... 19, 20

*E.C.B. v. United States*,
  No. 2:22-cv-00915-CDB (D. Ariz. Nov. 8, 2022) .................................................. 9, 20

**TABLE OF AUTHORITIES—Continued**

**Page(s)**

*E.L.A. v. United States*,
No. C20-1524-RAJ, 2023 WL 3456889 (W.D. Wash. May 15, 2023) ........................ 9

*E.S.M. v. United States*,
No. CV-21-00029-TUC-JAS, 2022 WL 11729644 (D. Ariz. Oct. 20, 2022) ................................................................................................................ *passim*

*Ekweani v. Maricopa Cnty. Sheriff's Off.*,
No. CV-08-01551-PHX-FJM, 2010 WL 2079773 (D. Ariz. May 24, 2010) ...................................................................................................................... 24

*Elgamal v. Bernacke*,
714 F. App'x 741 (9th Cir. 2018) .................................................................... 21

*Elgamal v. United States*,
No. 13-00967, 2015 WL 13648070 (D. Ariz. July 8, 2015) .......................... 21

*Erickson v. Pardus*,
551 U.S. 89 (2007) ............................................................................................ 27

*F.R. v. United States*,
No. CV-21-00339-PHX-DLR, 2022 WL 2905040 (D. Ariz. July 22, 2022) ................................................................................................................ *passim*

*Firebaugh Canal Water Dist. v. United States*,
712 F.3d 1296 (9th Cir. 2013) ........................................................................ 20

*Fisher Bros. Sales, Inc. v. United States*,
46 F.3d 279 (3d Cir. 1995) .............................................................................. 15

*Fuentes-Ortega v. United States*,
No. CV-22-00449-PHX-DGC, 2022 WL 16924223 (D. Ariz. Nov. 14, 2022) ................................................................................................................ *passim*

*Galvin v. Hay*,
374 F.3d 739 (9th Cir. 2004) ............................................................................ 8

*Gilbert v. La Paz Cnty.*,
No. CV 18-01792-PHC-DCG (DMF), 2020 WL 2064099 (D. Ariz. Apr. 29, 2020) ........................................................................................................ 26

*Gipson v. Kasey*,
150 P.3d 228 (Ariz. 2007) .............................................................................. 25

iv

1

**TABLE OF AUTHORITIES—Continued**

2

Page(s)

3

*Harlow v. Fitzgerald*,

4
    457 U.S. 800 (1982) ........................................................................... 11

5

*Hydrogen Tech. Corp. v. United States*,

6
    831 F.2d 1155 (1st Cir. 1987) ....................................................... 18

7

*Indian Towing Co. v. United States*,

8
    350 U.S. 61 (1955) ....................................................................... 19, 21

9

*J.P. v. United States*,
    No. CV-22-00683-PHX-MTL, 2023 WL 4237331 (D. Ariz. June 28,

10
    2023) ..................................................................................... *passim*

11

*J.S.R. by & through J.S.G. v. Sessions*,

12
    330 F. Supp. 3d 731 (D. Conn. 2018) ................................................ 9

13

*Jacinto-Castanon v. U.S. ICE*,
    319 F. Supp. 3d 491 (D.D.C. 2018) ................................... 13, 15, 17

14

*Lam v. United States*,

15
    979 F.3d 665 (9th Cir. 2020) ............................................................. 8

16

*Learner v. John Hancock Life Ins. Co.*,

17
    No. CV-09-01933-PHX-ROS, 2011 WL 13185713 (D. Ariz. Mar. 21,

18
    2011) ............................................................................................. 25

19

*Lee v. United States*,
    No. CV 19-08051-PCT-DLR (DMF), 2020 WL 6573258 (D. Ariz. Sept.

20
    18, 2020) ...................................................................................... 6, 7

21

*Liranzo v. United States*,

22
    690 F.3d 78 (2d Cir. 2012) .......................................................... 21

23

*M.S.E. v. United States*,
    No. CV-22-01242-PHX-SMM (D. Ariz. Sept. 29, 2023) .................... *passim*

24

*Marlys Bear Med. v. U.S. ex rel. Sec'y of Dep't of Interior*,

25
    241 F.3d 1208 (9th Cir. 2001) .................................................. 12, 14

26

*Martinez v. United States*,
    No. CV-13-00955-TUC-CKJ (LAB), 2018 WL 3359562 (D. Ariz. July

27
    10, 2018) ........................................................................................ 20

28

1

**TABLE OF AUTHORITIES—Continued**

2

**Page(s)**

3

*Mazur v. I.N.S.*,

4
   957 F. Supp. 1041 (N.D. Ill. 1997) ............................................................. 22

5

*Meier v. United States*,

6
   No. C 05-04404 WHA, 2006 WL 3798160 (N.D. Cal. Dec. 22, 2006) ........................ 7

7

*Mintz v. Bell Atl. Sys. Leasing Int'l, Inc.*,
   905 P.2d 559 (Ariz. Ct. App. 1995) ...................................................... 23, 25

8

*Mirmehdi v. United States*,

9
   689 F.3d 975 (9th Cir. 2012) (Mot. 14) ...................................................... 14

10

*Moher v. United States*,

11
   875 F. Supp. 2d 739 (W.D. Mich. 2012) ...................................................... 18

12

*Monell v. New York City Dept. of Soc. Servs.*,

13
   436 U.S. 658 (1978) ............................................................................ 7

14

*Ms. L. v. U.S. I.C.E.*,
   302 F. Supp. 3d 1149 (S.D. Cal. 2018) ...................................................... 13

15

*Ms. L. v. U.S. I.C.E. (Ms. L. II)*,

16
   310 F. Supp. 3d 1133 (S.D. Cal. 2018) .................................................. 9, 15

17

*Myers & Myers, Inc. v. U.S. Postal Serv.*,

18
   527 F.2d 1252 (2d Cir. 1975) ................................................................ 18

19

*Nunez Euceda v. United States*,
   No. 2:20-CV-10793-VAP-GJSx, 2021 WL 4895748 (C.D. Cal. Apr. 27,

20
   2021) ............................................................................................... 9

21

*Nurse v. United States*,

22
   226 F.3d 996 (9th Cir. 2000) .......................................................... 8, 9, 10

23

*O'Toole v. United States*,

24
   295 F.3d 1029 (9th Cir. 2002) .............................................................. 12

25

*Pankratz v. Willis*,
   744 P.2d 1182 (Ariz. Ct. App. 1987) ...................................................... 20

26

27

28

1

## **TABLE OF AUTHORITIES—Continued**

2

**Page(s)**

3

*Peña Arita v. United States*,
4
    470 F. Supp. 3d 663 (S.D. Tex. 2020) ....................................................... 14

5

*Peterson v. Martinez*,
6
    No. 3:19-cv-01447-WHO, 2020 WL 999832 (N.D. Cal. Mar. 2, 2020) ..................... 15

7

*Prescott v. United States*,
8
    973 F.2d 696 (9th Cir. 1992) ................................................................... 16

9

*Quiroz v. ALCOA Inc.*,
    416 P.3d 824 (Ariz. 2018)....................................................................... 26

10

*Rand v. City of Glendale*,
11
    No. 1 CA-CV 07-0722, 2008 WL 5383363 (Ariz. Ct. App. Dec. 26,
12
    2008) ................................................................................................. 24

13

*Rodriguez v. United States*,
    No. 222CV02845JLSAFM, 2022 WL 19237182 (C.D. Cal. Dec. 22,
14
    2022) ................................................................................................. 6

15

*Rondelli v. Pima Cnty.*,
16
    586 P.2d 1295 (Ariz. Ct. App. 1978)......................................................... 24

17

*Ruiz v. United States*,
    No. 13-cv-1241 (KAM) (SMG), 2014 WL 4662241 (E.D.N.Y. Sept. 18,
18
    2014) ................................................................................................. 13

19

*Ryan v. ICE*,
20
    974 F.3d 9 (1st Cir. 2020) ....................................................................... 21

21

*S.E.B.M. v. United States*,
22
    No. 1:21-CV-00095-JHR-LF, 2023 WL 2383784 (D.N.M. Mar. 6, 2023)................. 25

23

*S.M.F. v. United States*,
    No. 2:22-CV-01193-RAJ, 2023 WL 6215319 (W.D. Wash. Sept. 25,
24
    2023) ............................................................................................. 6, 9

25

*Sabow v. United States*,
26
    93 F.3d 1445 (9th Cir. 1996) ............................................................ 12, 13

27

*Safe Air for Everyone v. Meyer*,
    373 F.3d 1035 (9th Cir. 2004) ................................................................. 5
28

## <u>TABLE OF AUTHORITIES—Continued</u>

**Page(s)**

*Sanders v. Brown*,
  504 F.3d 903 (9th Cir. 2007) ......................................................................... 5

*Savage v. Boies*,
  272 P.2d 349, 351 (Ariz. 1954)..................................................................... 24

*Sea Air Shuttle Corp. v. United States*,
  112 F.3d 532 (1st Cir. 1997) ........................................................................ 21

*Tekle v. United States*,
  511 F.3d 839 (9th Cir. 2007) ........................................................................ 21

*Terbush v. United States*,
  516 F.3d 1125 (9th Cir. 2008) ................................................................. 12, 14

*Tobar v. United States*,
  731 F.3d 938 (9th Cir. 2013) ........................................................................ 11

*United States v. Gaubert*,
  499 U.S. 315 (1991).................................................................................. 10, 12

*United States v. Olson*,
  546 U.S. 43 (2005)......................................................................................... 19

*Walding v. United States*,
  955 F. Supp. 2d 759 (W.D. Tex. 2013).......................................................... 22

*Welch v. United States*,
  409 F.3d 646 (4th Cir. 2005) ........................................................... 16, 17, 18

*Whisnant v. United States*,
  400 F.3d 1177 (9th Cir. 2005) ...................................................................... 12

*Wilbur P.G. v. United States*,
  No. 4:21-cv-04457-KAW, 2022 WL 3024319 (N.D. Cal. May 10, 2022)........... 8, 9, 16

*Wolfe v. Strankman*,
  392 F.3d 358 (9th Cir. 2004) ......................................................................... 5

*Xue Lu v. Powell*,
  621 F.3d 944, 950 (9th Cir. 2010) ................................................................ 21

<u>**TABLE OF AUTHORITIES—Continued**</u>

**Page(s)**

*Young v. United States,*
   769 F.3d 1047 (9th Cir. 2014) ..................................................................... 12

**STATUTE:**

28 U.S.C. § 2674 ............................................................................................. 19

**RULES:**

Fed. R. Civ. P. 12(b)(1) ...................................................................................... 5

Fed. R. Civ. P. 12(b)(6) ....................................................................... 2, 5, 6, 23

**OTHER AUTHORITY:**

Restatement (Second) of Torts § 46, comment g ............................................. 25

**INTRODUCTION**

This case concerns what even the government now admits was a "human tragedy," Mot. to Dismiss ("Mot.") 1, ECF No. 21: an unprecedented and unconstitutional government policy under which government officials forcibly separated parents from their children. Plaintiffs are two sets of parents and children—P.C.J. and his son M.C.J., and O.P.V. and his son T.P.C.—who were subjected to this inhumane Family Separation Policy not once, but twice. Plaintiffs suffered immense harm as a result. Plaintiffs now seek redress from the government under the Federal Tort Claims Act (FTCA).

Despite denouncing the Family Separation Policy, Defendant tries to evade liability. Defendant first argues, as the government has in many family-separation cases, that this Court lacks jurisdiction over Plaintiffs' claims. Many District Courts in this Circuit have adjudicated this issue and not one has accepted the government's sweeping jurisdiction-stripping theories. Defendant offers nearly identical recitations of those rejected arguments here, without bothering to cite—let alone distinguish—the vast majority of those decisions. This Court should not be the first to adopt Defendant's theories.

*First*, the Complaint does not allege a systemic tort. Plaintiffs are not bringing systemic claims against the entire federal government or some agency thereof; they allege wrongdoing by specific government officials.

*Second*, the discretionary function exception does not bar Plaintiffs' claims. The government does not have discretion to violate the Constitution, and Plaintiffs plausibly alleged that government officials violated their constitutional rights to family integrity. The Family Separation Policy also was mandatory, not discretionary. Moreover, Defendant has failed to carry its burden of identifying how its decision to forcibly separate parents from their children is susceptible to legitimate policy analysis.

*Third*, the due care exception does not bar Plaintiffs' claims. The due care exception applies only to conduct mandated by statute or regulation. No statute or regulation required government officials to forcibly separate Plaintiffs from one another. And even if one did, Defendant fails to argue, as required by the due care exception, that those separations were

marked by a baseline concern for the rights of others.

*Fourth*, the private-person-analogue requirement does not bar Plaintiffs' claims. The private-person-analogue inquiry requires a reasonable analogy to a case where a private person would be liable in the same manner and to the same extent for the claims at issue. Courts in this District have universally held that the claims at issue here have reasonable private analogues under like circumstances.

*Fifth*, the Complaint does not seek relief against independent contractors. Plaintiffs challenge government officers' conduct in exposing M.C.J. and T.P.C. (Plaintiff-Children) to abuse in government custody. Plaintiffs' claims fall squarely within the FTCA.

Defendant also contends that this Court should dismiss under Rule 12(b)(6) because Plaintiffs failed to state claims of intentional infliction of emotion distress (IIED) and negligence. Defendant's argument that Arizona law bars IIED claims arising out of a lawful arrest is simply wrong. And Defendant's potshots at Plaintiffs' negligence allegations miss their mark. As other courts have concluded when reviewing nearly identical complaints, Plaintiffs sufficiently identified the source of the officers' duty of due care to Plaintiffs and are not required to identify the particular officers who separated them. And Defendant must be reading another complaint when it argues that the one at issue here does not "identify the specific conduct that Plaintiffs claim to have been negligent." Mot. 26. The Complaint recounts with specificity the ways in which officers breached their duty of care, including by prying seven-year-old T.P.C. from his father's arms, detaining Plaintiffs in frigid cells, and refusing to tell P.C.J. and O.P.V. where their children were.

At bottom, Defendant's motion mischaracterizes the facts and ignores the law. It refuses to treat the Family Separation Policy for what Plaintiffs alleged it to be: an unconstitutional executive policy mandating the forcible separation of parents from their children. It closes its eyes to the mountain of case law in family-separation cases blocking its arguments at every turn. It instead relies heavily upon inapposite cases and invites this Court to apply rejected standards. This Court should do what every District Court in this Circuit presented with a similar motion to dismiss has done: Deny it.

**BACKGROUND**

**A.     The Family Separation Policy**

The Family Separation Policy was, as the government now admits, a "human tragedy."  Mot. 1.  That Policy traces back to the spring of 2017, when Department of Homeland Security (DHS) officials announced that DHS was considering separating parents from their children upon arrival at the southern border to intimidate or stop others from exercising their legal right to seek asylum in the United States.  Compl. ¶ 22, ECF No. 1.  Months later, the government launched a family separation pilot program under which government officials prosecuted parents who crossed the border with children, detained the parents, and forcibly separated the parents and children.  *Id.* ¶¶ 23, 24.  The pilot program ended in November 2017, after separating 281 individuals.  *Id.* ¶¶ 26-27.

Senior officials at the Department of Justice (DOJ) and DHS exchanged a draft memorandum titled "Policy Options to Respond to Border Surge of Illegal Immigration." *Id.* ¶ 29.  Two options were "Increase[] Prosecution of Family Unit Parents" and "Separate Family Units."  *Id.*  Under the prosecution policy, "parents would be prosecuted for illegal entry … and the minors present with them would be placed in HHS custody as [unaccompanied alien children]."  *Id.*  The memorandum recommended publicizing the policies to ensure that they had the hoped-for "substantial deterrent effect."  *Id.*

In April 2018, then-Attorney General Jeff Sessions announced a "zero-tolerance policy" that extended the pilot program across the southern border.  *Id.* ¶ 30.  Under this new policy, which came to be known as the "Family Separation Policy," "DOJ mandated the criminal prosecution of *all* persons who crossed the United States border, regardless of whether they were seeking asylum or arriving with children."  *Id.*  Then-DHS Secretary Kirstjen Nielsen signed a policy directing CBP to refer for prosecution adults arriving in family units.  *Id.*  As Sessions warned, "[i]f you cross this border unlawfully" with a child, "then we will prosecute you and that child will be separated from you."  *Id.* ¶ 31.

Government officials admitted that the Family Separation Policy was a "new policy" meant to deter immigration.  *Id.* ¶ 37e.  Then-Chief of Staff John Kelly, for

instance, told reporters that "a big name of the game is deterrence." *Id.* ¶ 37c.  And Sessions told reporters that "hopefully people will get the message and … not break across the border unlawfully." *Id.* ¶ 37d.  Government officials knew that this would cause severe emotional harm, which was the point.  *See id.*  ¶ 28, 35, 37, 41, 50-53.

Two months after the Policy began, a federal court held that it likely violated separated families' constitutional rights.  *Id.* ¶ 55.  Only after that court ordered the government to begin reuniting families did the reunification process begin.  *Id.* ¶¶ 55-56.

### B.     The Separations At Issue Here

In May 2018, government officials apprehended Plaintiffs at the southern border and took them to detention facilities in Arizona.  *Id.* ¶¶ 67, 103.  P.C.J. and his thirteen-year-old son, M.C.J., were detained in separate cells that were too far apart for them to be able to talk to each other.  *Id.* ¶¶ 68-69.  The next day, officers removed M.C.J. from his cell and led him out of the facility.  *Id.* ¶ 70.  P.C.J., who had never been apart from his son, could do nothing but watch.  *Id.*  O.P.V., for his part, was at least initially detained in the same cell as his seven-year-old son T.P.C.  *Id.* ¶ 104.  This cell was in a facility colloquially known as "the icebox," but the family was given only aluminum blankets for warmth and cold soup to eat.  *Id.*  Officers soon demanded that O.P.V. turn his young son over to them.  *Id.* ¶ 105.  When O.P.V. resisted, officers pried the seven-year-old—who was clinging to his father—out of his father's arms.  *Id.* ¶ 105.

After separating the children from their parents, officers processed the children as unaccompanied minors and sent them to juvenile shelters.  *Id.* ¶¶ 68, 76, 106; *see also* Mot., Ex. B, De La Cruz Decl. ¶¶ 12-14, ECF No. 20-3.  During their time at these shelters, thirteen-year-old M.C.J. fell ill and seven-year-old T.P.C.—who was *not* experiencing any symptoms of illness—was given multiple injections per day of a medication that induced drowsiness.  Compl. ¶¶ 76, 106.  The parents were then transferred from facility to facility, where they were subjected to cruel and inhumane treatment.  *Id.* ¶¶ 72-73, 108-109.  It took weeks for the parents to learn where their children had been taken.  *Id.* ¶¶ 74, 109-110.  Plaintiffs suffered considerably during their time apart.  *Id.* ¶¶ 71-76, 106, 113-114.

In July 2018, after nearly 70 days apart, Plaintiffs were reunited with each other in Karnes, Texas. *Id.* ¶¶ 77, 112-113. But less than a month later, Plaintiffs were separated again. *Id.* ¶¶ 80-86, 115-121. Without explanation, several armed officers entered the parents' cells, handcuffed them, and placed them and other migrants on a bus to Pearsall, Texas. *Id*. ¶¶ 81-88, 116-118. There, P.C.J. was locked in a frigid cell with only a sheet, and O.P.V. was kept in solitary confinement. *Id.* ¶¶ 91, 120. The children, meanwhile, were told only that their parents were no longer at Karnes and were given no information as to when they would see their parents again. *Id.* ¶¶ 93, 119. Indeed, officers taunted M.C.J. that he and the other children would be deported while their fathers remained in ICE custody. *Id.* ¶ 93. Although Plaintiffs were eventually reunited, *id.* ¶¶ 95, 121, the trauma of this second separation persists, *id.* ¶¶ 101-102, 125-131.

## STANDARD OF REVIEW

In considering a facial attack on jurisdiction under Rule 12(b)(1), the court must accept as true the complaint's factual allegations and draw all reasonable inferences in plaintiffs' favor. *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004). If a defendant raises a factual attack by disputing the allegations, the "court may review evidence beyond the complaint." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).

In considering a Rule 12(b)(6) challenge, the court must assume the truth of the complaint's factual allegations and credit all reasonable inferences arising from those allegations. *Sanders v. Brown*, 504 F.3d 903, 910 (9th Cir. 2007). A plaintiff need only plead sufficient factual allegations that "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A court will not order dismissal if there is "any set of facts consistent with the allegations in the complaint" that would entitle the plaintiff to relief. *Id.* at 563; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## ARGUMENT

Defendant admits that it "disavow[s]" and "does not defend the wisdom of the" Family Separation Policy, and that its actions under that Policy created a far-reaching "human tragedy." Mot. 1, 7. Defendant nevertheless argues that this Court lacks

5

jurisdiction to reach the merits of Plaintiffs' claims and that Plaintiffs failed to state claims for IIED and negligence.  In so doing, Defendant barely even acknowledges—let alone meaningfully distinguishes—the host of cases in this District and beyond concerning identical claims that have rejected Defendant's exact jurisdictional arguments.  And Defendant's Rule 12(b)(6) arguments distort Arizona law and ignore Plaintiffs' allegations. In short, as the many courts to come before have held, Defendant's arguments are wrong. This Court should join that consensus and deny Defendant's motion to dismiss.

**I.      Plaintiffs' Claims Are Permitted Under the Federal Tort Claims Act.**

**A.      The Complaint Does Not Allege Systemic Tort Claims.**

Defendant contends that Plaintiffs' claims are "based on policymaking or agency-wide conduct that fail under the FTCA."  *Id.* at 9.  This argument has been rejected by every court in this District to consider it in this context.  *See M.S.E. v. United States*, No. CV-22-01242-PHX-SMM, at *12-13 (D. Ariz. Sept. 29, 2023); *J.P. v. United States*, No. CV-22-00683-PHX-MTL, 2023 WL 4237331, at *5 (D. Ariz. June 28, 2023); *Fuentes-Ortega v. United States*, No. CV-22-00449-PHX-DGC, 2022 WL 16924223, at *5 (D. Ariz. Nov. 14, 2022); *E.S.M. v. United States*, No. CV-21-00029-TUC-JAS, 2022 WL 11729644, at *2 (D. Ariz. Oct. 20, 2022); *B.A.D.J. v. United States*, No. CV-21-00215-PHX-SMB, 2022 WL 11631016, at *2-3 (D. Ariz. Sept. 30, 2022); *F.R. v. United States*, No. CV-21-00339-PHX-DLR, 2022 WL 2905040, at *3-4 (D. Ariz. July 22, 2022).[1]  For good reason:  This argument lacks a "sound legal basis."  *A.F.P. v. United States*, No. 1:21-cv-00780-DAD-EPG, 2022 WL 2704570, at *18 (E.D. Cal. July 11, 2022).

Defendant's premise is that an FTCA plaintiff cannot assert claims that seek to "hold the United States liable based on the conduct of an agency of the government as a whole." Mot. 8 (citing, among other cases, *Lee v. United States*, No. CV 19-08051-PCT-DLR (DMF), 2020 WL 6573258, at *6-7 (D. Ariz. Sept. 18, 2020)).  Defendant's reliance on

---

[1] *See also, e.g.*, *S.M.F. v. United States*, No. 2:22-CV-01193-RAJ, 2023 WL 6215319, at *5 (W.D. Wash. Sept. 25, 2023); *Rodriguez v. United States*, No. 222CV02845JLSAFM, 2022 WL 19237182, at *4 (C.D. Cal. Dec. 22, 2022); *A.F.P.*, 2022 WL 2704570, at *18 (E.D. Cal. July 12, 2022).

*Lee* "misses the mark." *Fuentes-Ortega*, 640 F. Supp. 3d at 885. *Lee* involved a suit against the government "for its own alleged negligence or based on its purported vicarious liability as an employer," and the complaint there failed to identify *any* "alleged acts or omissions of specific federal employees for which the Government could be held liable 'if a private person' under Arizona law." *Lee*, 2020 WL 6573258, at *5.[2]

Here, unlike in *Lee*, Plaintiffs have alleged wrongdoing by specific government officials, not the government as a whole. Each count specifically alleges that "Defendant and the federal officials and officers referenced above" violated Plaintiffs' rights. Compl. ¶¶ 134, 139, 140, 154. The Complaint also alleges numerous wrongful actions by individual officers acting within the scope of their employment. *See id.* ¶ 17. For example, the Complaint alleges that certain federal officials designed the Family Separation Policy, which resulted in Plaintiffs' separations, *e.g.*, *id.* ¶¶ 30, 39, 66; that "officers subjected detained families to increasingly inhumane and unsafe conditions," *e.g.*, *id.* ¶¶ 39, 72, 116; that "officers" yelled at Plaintiffs and attempted to force them to sign documents they did not understand, *e.g.*, *id.* ¶¶ 68, 103, 116, 126; that "officers" forcibly separated Plaintiffs from one another and refused to provide them with information about one another's whereabouts, *e.g.*, *id.* ¶¶ 63, 68, 74, 84-85, 91, 105, 116; that "officials" failed to correctly enter information about certain Plaintiffs into their systems, further delaying reunification, *id.* ¶ 44; and that "officers" threatened Plaintiffs with deportation or delayed reunification, including in order to compel their compliance, *e.g.*, *id.* ¶¶ 62, 81, 98.

Apparently latching onto the Complaint's scattered references to the "government," *see, e.g.*, *id.* ¶ 32, Defendant stresses the difference between *Monell v. New York City Dept. of Soc. Servs.*, 436 U.S. 658 (1978), and the FTCA, *see* Mot. 9-10. That is all irrelevant. As other courts have recognized, dismissing an FTCA complaint on the basis that the complaint occasionally references the government "would make little sense given that the

---

[2] Defendant also cites *Meier v. United States*, No. C 05-04404 WHA, 2006 WL 3798160 (N.D. Cal. Dec. 22, 2006), and two family-separation cases. *Meier* concerned the private-analogue exception, not systemic torts. *See id.* at *3-4. And the separation cases *rejected* Defendant's argument. *See F.R.*, 2022 WL 2905040, at *3-4; *B.A.D.J.*, 2022 WL 11631016, at *5.

FTCA requires a plaintiff to sue the United States itself." *Wilbur P.G. v. United States*, No. 4:21-cv-04457-KAW, 2022 WL 3024319, at *6 (N.D. Cal. May 10, 2022) (cleaned up). Because they have not yet had the benefit of discovery, the Complaint also references unidentified officers at points. *See, e.g.*, Compl. ¶ 63. That is not an appropriate basis for dismissal, either. To hold otherwise "would put [plaintiffs] in a catch-22: they can only identify the individual employees who wronged them through discovery, but they are blocked from discovery because they cannot identify the individual employees who wronged them." *E.S.M.*, 2022 WL 11729644, at *2; *accord, e.g.*, *M.S.E.*, ECF No. 53 at 13-14; *J.P.*, 2023 WL 4237331, at *5.

To the extent the Complaint "assert[s] claims based upon the actions of individual government employees," this Court has jurisdiction. *E.S.M.*, 2022 WL 11729644, at *2.

**B.     The Discretionary Function Exception Does Not Apply Here.**

The discretionary function exception (DFE) precludes FTCA claims only where the challenged conduct (1) "involves an element of judgment or choice" and (2) "implements social, economic or political policy considerations." *Nurse v. United States*, 226 F.3d 996, 1001 (9th Cir. 2000). Defendant bears the burden of proving that both prongs apply. *Lam v. United States*, 979 F.3d 665, 673 (9th Cir. 2020). Defendant cannot do so.

**1.     Defendant's Conduct Was Not Discretionary.**

Defendant cannot carry its burden to show that the first DFE prong applies. First, the government has no discretion to violate the Constitution, and Plaintiffs have plausibly alleged that Defendant's conduct violated their constitutional rights. Second, even if the challenged conduct was constitutional, the entire point of the Family Separation Policy was that it was not discretionary. "Zero Tolerance" meant just that.

a. The DFE is inapplicable because Plaintiffs have sufficiently pled that separating them violated their constitutional rights to family integrity and due process. As the Ninth Circuit has explained, "[f]ederal officials do not possess discretion to violate constitutional rights." *Galvin v. Hay*, 374 F.3d 739, 758 (9th Cir. 2004) (citation omitted). Thus, where the government's conduct is unconstitutional, "the discretionary function exception does

not apply." *Id.*; *accord, e.g.*, *Nurse*, 226 F.3d at 1002 n.2 ("[T]he Constitution can limit the discretion of federal officials such that the FTCA's discretionary function exception will not apply."). At the motion-to-dismiss stage, as long as the plaintiff plausibly alleges that the government's conduct "may have been non-discretionary," the court "must" not dismiss the plaintiff's FTCA claims under the DFE. *Nurse*, 226 F.3d at 1002.

*Every* District Court in this Circuit to analyze this issue in this context has found that plaintiffs' allegations of unconstitutional conduct defeated the DFE. *See M.S.E.*, ECF No. 53 at 4-6; *S.M.F.*, 2023 WL 6215319, at \*4; *E.L.A. v. United States*, No. C20-1524-RAJ, 2023 WL 3456889, at \*3 (W.D. Wash. May 15, 2023); *J.P.*, 2023 WL 4237331, at \*9; *Fuentes-Ortega*, 640 F.3d at 883; *E.C.B. v. United States*, No. 2:22-cv-00915-CDB (D. Ariz. Nov. 8, 2022), ECF No. 24 at 11-12; *E.S.M.*, 2022 WL 11729644, at \*4-5; *B.A.D.J.*, 2022 WL 11631016, at \*2-3; *F.R.*, 2022 WL 2905040, at \*5; *A.F.P.*, 2022 WL 2704570, at \*11-14; *Wilbur P.G.*, 2022 WL 3024319, at \*4-5; *A.I.I.L. v. Sessions*, No. CV-19-00481-TUC-JCH, 2022 WL 992543, at \*2 (D. Ariz. Mar. 31, 2022); *Nunez Euceda v. United States*, No. 2:20-CV-10793-VAP-GJSx, 2021 WL 4895748, at \*3 (C.D. Cal. Apr. 27, 2021); *A.P.F. v. United States*, 492 F. Supp. 3d 989, 996 (D. Ariz. 2020); *C.M. v. United States*, No. CV-19-05217-PHX-SRB, 2020 WL 1698191, at \*4 (D. Ariz. Mar. 30, 2020).

This case is no different. The Complaint plausibly alleges that Defendant's Family Separation Policy violated Plaintiffs' due process right to family integrity. *E.g.*, Compl. ¶ 46. Indeed, as *C.M.* recently concluded at the summary-judgment stage, "[t]he United States' separation of Plaintiffs for weeks … unquestionably interfered with Plaintiffs' right to family integrity." *C.M. v. United States*, Nos. CV-19-05217-PHX-SRB, CV-20-00065-PHX-SRB, 2023 WL 7102132, at \*10 (D. Ariz. Oct. 24, 2023). And in enjoining Defendant's Family Separation Policy, the *Ms. L.* Court held that separated families were not only likely to succeed on their due process claims—success was "assured." *Ms. L. v. U.S. I.C.E. (Ms. L. II)*, 310 F. Supp. 3d 1133, 1145 (S.D. Cal. 2018); *see also J.S.R. by & through J.S.G. v. Sessions*, 330 F. Supp. 3d 731, 741 (D. Conn. 2018) (noting that the government "agree[d] that a constitutional violation occurred when [it] separated children

9

1   from their parents—both on the basis of substantive due process, as the separation deprived

2   the children of their right to family integrity, and procedural due process").

3          That is enough to reject Defendant's attempt to avoid liability under the DFE.  *See*

4   *supra* p. 9 (collecting cases).  For example, in *Nurse*, the Ninth Circuit reversed the

5   dismissal of a complaint under the DFE even though it could not yet determine "whether

6   the acts of the policy-making defendants violated the Constitution, and, if so, what specific

7   constitutional mandates they violated."  226 F.3d at 1002.  As the Ninth Circuit explained,

8   those questions should not be resolved at the motion-to-dismiss stage, but should be

9   "fleshed out by the facts as this case proceeds toward trial."  *Id.*

10         Defendant contests that a constitutional violation defeats the DFE only when "the

11  Constitution … establish[es] such a specific prescription that it removes an official's

12  discretion."  Mot. 17 (citing *United States v. Gaubert*, 499 U.S. 315, 322 (1991).  *Gaubert*,

13  however, did not implicate a constitutional violation.  *See* 499 U.S. at 322 (referring to a

14  "federal statute, regulation, or policy").  *Nurse* did.  The *Gaubert* standard is inapposite

15  here.  *See M.S.E.*, ECF No. 53 at 5; *Fuentes-Ortega*, 640 F. Supp. 3d at 882.

16         Defendant next implies that *every single court* that rejected a DFE argument in a

17  family-separation case reached the wrong result because they all failed to import qualified

18  immunity's "clearly established" standard into the DFE analysis.  Mot. 18-19.  Courts in

19  this District have universally rejected this argument.  *See J.P.*, 2023 WL 4237331, at *9

20  (collecting cases); *M.S.E.*, ECF No. 53 at 4-6; *Fuentes-Ortega*, 640 F. Supp. 3d at 883;

21  *E.S.M.*, 2022 WL 11729644, at *5; *C.M.*, 2023 WL 7102132, at *8 n.7 (agreeing at

22  summary judgment "that the qualified immunity analysis is inapplicable to the DFE").[3]  As

23  *F.R.* explained, applying a "plausibility" standard at the motion-to-dismiss stage is

24  consistent with both Ninth Circuit precedent and the decisions of "other judges in this

25  District."  2022 WL 2905040, at *5 (collecting cases); *accord M.S.E.*, ECF No. 53 at 6.

26         Just as in *F.R.*, Defendant offers "no compelling reason for the Court to deviate

27

28  ─────────────
    [3] Even courts that have expressed doubt as to the viability of *Nurse* have nonetheless
    applied it.  *See J.P.*, 2023 WL 4237331, at *9; *B.A.D.J.*, 2022 WL 11631016, at *3

                                            10

1    from" the many other cases to reject this argument.  2022 WL 2905040, at *5.  Indeed, as

2    it has before, Defendant fails to cite a single case applying the clearly established standard

3    to the DFE.  *See J.P.*, 2023 WL 4237331, at *9 (noting this deficiency).  And the cases it

4    does cite are readily distinguishable.  *Harlow v. Fitzgerald* was not an FTCA case; it does

5    not even mention the DFE.  457 U.S. 800, 818 (1982).  *Denson v. United States* is an

6    Eleventh Circuit case that did not reach the DFE issue.  574 F.3d 1318, 1344-45 (11th Cir.

7    2009).  And *Butz v. Economou* addressed the DFE in dicta, explaining that *if* executive

8    officials were entitled to absolute immunity (a proposition it rejected in the next sentence),

9    that would gut the FTCA.  438 U.S. 478, 404 (1978).

10   Plaintiffs have plausibly alleged that separating them violated their constitutional

11   rights to family integrity and due process.  Defendant's DFE argument fails.

12   b.   The DFE is also inapplicable here because government officials separated

13   Plaintiffs pursuant to a mandatory policy.  "[T]he discretionary function exception will not

14   apply when a federal statute, regulation, or policy specifically prescribes a course of action

15   for an employee to follow."  *Berkovitz v. United States*, 486 U.S. 531, 536 (1988); *accord*

16   *Tobar v. United States*, 731 F.3d 938, 945 (9th Cir. 2013).

17   Such is the case here.  The Family Separation Policy was "mandatory."  Compl.

18   ¶ 46.  "As implemented, the Policy resulted in officials separating *all* parents from their

19   children, even if the parents were not criminally prosecuted or in criminal custody."  *Id.*

20   ¶ 33.  "The government designated *every* family unit adult who crossed the border between

21   ports of entry as amenable for prosecution."  *Id.*; *see also id.* at ¶ 31 (similar).  The

22   government officers who separated Plaintiffs from one another thus had "no rightful option

23   but to adhere to" the mandatory Family Separation Policy.  *Berkovitz*, 486 U.S. at 536.

24   Whether or not Plaintiffs should be separated was not up to these officials' "choice," *id.*;

25   the Policy dictated the outcome.  The DFE accordingly does not bar Plaintiffs' claims.

26   **2.    Defendant's Conduct Did Not Implement Policy Considerations.**

27   Because Defendant cannot prove that the first DFE prong applies, this Court need

28   not reach the second prong.  Nonetheless, Defendant's arguments fail on this prong, too.

The DFE's second prong asks whether the challenged conduct involves the "kind of policy judgment that the [DFE] was designed to shield"—one involving "social, economic, or political policies." *Gaubert*, 499 U.S. at 332. This "policy rationale" must be "legitimate," *Sabow v. United States*, 93 F.3d 1445, 1454 (9th Cir. 1996), and "grounded" in the "statute, regulation, or agency guidelines" giving the "Government agent … discretion" over the matter in the first place, *Gaubert*, 499 U.S. at 323-325.  "'The mere association … with regulatory concerns,' however, is insufficient to trigger the discretionary function exception." *O'Toole v. United States*, 295 F.3d 1029, 1034 (9th Cir. 2002) (citation omitted)).  Thus, "actions that are regulatory or 'uniquely governmental' in nature are not automatically covered by the exception by virtue of that designation." *Whisnant v. United States*, 400 F.3d 1177, 1181 (9th Cir. 2005).  Because "the Government has the burden of proving the [DFE] applies … [t]here must be reasonable support in the record for a court to find, without imposing its own conjecture, that a decision was policy-based or susceptible to policy analysis." *Marlys Bear Med. v. U.S. ex rel. Sec'y of Dep't of Interior*, 241 F.3d 1208, 1216 (9th Cir. 2001).  "It is not sufficient for the government merely to [wave] the flag of policy as a cover for anything and everything it does that is discretionary in nature." *Terbush v. United States*, 516 F.3d 1125, 1134 (9th Cir. 2008).

a.  Defendant has offered no legitimate social, economic, or political policy for separating Plaintiffs from one another, much less for the cruel and inhumane way in which it did so.  Defendant instead attempts to divvy up the Policy into discrete, mechanical steps—referring the parents for prosecution, detaining the parents in adults-only facilities, and deeming the children "unaccompanied" under the Trafficking Victims Protection Reauthorization Act (TVPRA)—all of which it claims are grounded in seemingly legitimate policy rationales.  This misconstrues Plaintiffs' Complaint, and the Court should reject Defendant's attempt to sanitize the Family Separation Policy in this way. *Cf. Young v. United States*, 769 F.3d 1047, 1054 (9th Cir. 2014) ("Our cases make clear that when determining whether the [DFE] applies in a particular case, 'the question of how the government is alleged to have been negligent is critical.'") (citation omitted).  The Family

1    Separation Policy was a "Zero Tolerance" mandate to systematically separate parents from

2    their children.  The question is whether that mandate was grounded in legitimate social,

3    economic, or political policies or otherwise susceptible to legitimate policy analysis.

4         It was not.  As the *C.M.* Court recently held, "separat[ing] families irrespective of

5    whether the parents were ever prosecuted to deter other potential migrants from entering

6    the United States … serve[s] no compelling or legitimate government interest."  2023 WL

7    7102132, at *10 (citing *R.I.L.R. v. Johnson*, 80 F. Supp. 3d 164, 188-90 (D.D.C. 2015),

8    and *Jacinto-Castanon v. U.S. ICE*, 319 F. Supp. 3d 491, 502 (D.D.C. 2018)).  The "cruelty

9    of … separation of a parent and child by the government" is justified only "in the most

10   dreadful circumstances," such as when the parent is "unwilling or unfit" to care for the

11   child.  *D.J.C.V. v. U.S. I.C.E.*, No. 18 Civ. 9115 (AKH), 2018 WL 10436675, at *1

12   (S.D.N.Y. Oct. 15, 2018).  There are no dreadful circumstances here:  The Policy was

13   "emblematic of the exercise of power without any reasonable justification in the service of

14   an otherwise legitimate governmental objective."  *Ms. L. v. U.S. I.C.E.*, 302 F. Supp. 3d

15   1149, 1167 (S.D. Cal. 2018) (quotation marks and citation omitted).

16        Other courts have reached the same conclusion in similar contexts.  For example, a

17   district court held that CBP officers' treatment of a minor was not "susceptible to policy

18   analysis" because the court could not "discern how deciding to wait fourteen hours before

19   contacting [the child's] parents and to only provide the child with a cookie and a soda over

20   twenty hours could constitute a considered judgment grounded in social, economic, or

21   political policies."  *Ruiz v. United States*, No. 13-cv-1241 (KAM) (SMG), 2014 WL

22   4662241, at *8 (E.D.N.Y. Sept. 18, 2014); *see also, e.g.*, *Sabow*, 93 F.3d at 1454 ("specific

23   acts" by military officers including "verbal abuse and a[ ] [retaliatory] investigation" did

24   not involve considerations of policy and were therefore not shielded by the exception).

25        Even taken at face value, Defendant's policy justifications are not legitimate or

26   grounded in the record.  Defendant's references to government discretion in the criminal

27   prosecution context, Mot. 13, ignores the fact that the government never prosecuted

28   Plaintiffs for a crime.  *See C.M.*, 2023 WL 7102132, at *11 (rejecting prosecutorial-

1    discretion argument for similar reason).

2          Defendant contends that "decisions surrounding whether and where to detain P.C.J.

3    and O.P.V. for proceedings were also discretionary and susceptible to policy analysis."

4    Mot. 13.  For support, Defendant cites a number of cases holding that the specific location

5    where a noncitizen or prisoner is detained is susceptible to policy analysis.  *Id.*  But the

6    issue here is not whether a particular Plaintiff should have been detained in a specific

7    location.  It is whether Defendant had a policy justification for systematically separating

8    parents from their children—and detaining them separately.  The Court should reject this

9    argument as merely waving "the flag of policy as a cover."  *Terbush*, 516 F.3d at 1134.[4]

10         *Peña Arita v. United States*, 470 F. Supp. 3d 663 (S.D. Tex. 2020), is inapposite.

11   *See* Mot. 14-15.  In the Fifth Circuit, "the *plaintiff* has the burden of establishing that the

12   discretionary function exception *does not* apply."  *Peña Arita*, 470 F. Supp. 3d at 684

13   (citation omitted) (emphasis added).  In this Circuit, the *government* bears the burden of

14   establishing that the exception *does* apply.  *See Marlys Bear Med.*, 241 F.3d at 1216.  The

15   shortcomings of the *Peña Arita* complaint have no bearing on this case.  Moreover,

16   plaintiffs there argued that the DFE was inapplicable only because the Policy was

17   mandatory under prong one.  Pls.' Resp. in Opp'n to Def. U.S.'s Mot. to Dismiss, *Peña*

18   *Arita v. United States*, No. 19-cv-288, 2020 WL 2511295 (S.D. Tex. Jan. 10, 2020).  They

19   "d[id] not dispute the conclusion that the Attorney General's memorandum" enacting the

20   Family Separation Policy "is an 'administration decisio[n] grounded in social, economic,

21   and political policy' that th[e] Court is without jurisdiction to second-guess" under prong

22   two.  470 F. Supp. 3d at 687 (citation omitted).

23         Finally, Defendant contends that whether a child is unaccompanied under the

24   TVPRA when their parent is "referred for prosecution" is a policy question.  Mot. 15.  But

25   Defendant does not explain how systematically deeming children "unaccompanied" for

26

27   ───────────────
     [4] Defendant's citation to *Mirmehdi v. United States*, 689 F.3d 975, 984 (9th Cir. 2012)
28   (Mot. 14), omits the "important caveat" that the plaintiffs in that case did not allege that
     the officers' conduct violated the Constitution.  *E.S.M.*, 2022 WL 11729644, at *4.

such a specious reason is susceptible to legitimate policy analysis—because it is not. *See C.M.*, 2023 WL 7102132, at *10-11; *cf. Ms. L. II*, 310 F. Supp. 3d at 1139 ("true 'unaccompanied alien children' " are those who arrive at the border without their parents, not those "detained with their parents at the border and who were thereafter separated from their parents"); *Jacinto-Castanon*, 319 F. Supp. 3d at 495 n.2 (children "rendered unaccompanied by the unilateral and likely unconstitutional actions of defendants" "are not true unaccompanied minors" under the TVPRA). And to the degree Defendant is arguing that individual officers' TVPRA determinations are discretionary, *C.M.* has rejected that argument, too: "CBP officers did not have discretion to pre-emptively designate children Plaintiffs as [unaccompanied children] before parent Plaintiffs were in fact unavailable to provide care and custody." 2023 WL 7102132, at *12 (and distinguishing *Fisher Bros. Sales, Inc. v. United States*, 46 F.3d 279 (3d Cir. 1995) (cited by Defendant at Mot. 15-16)).

b. Defendant also argues that certain individual allegations are barred by the DFE. *See* Mot. 16. These are not standalone claims. Rather, as courts in this District have recognized, they are "factual allegations primarily aimed at demonstrating the harm resulting from the separations." *A.P.F.*, 492 F. Supp. 3d at 996-97. They also show that officers acted with intent or recklessness and fell below their duty of care. At a minimum, these allegations provide context for assessing Plaintiffs' claims. *See, e.g.*, *Peterson v. Martinez*, No. 3:19-cv-01447-WHO, 2020 WL 999832, at *8 (N.D. Cal. Mar. 2, 2020) (inmate placement and management decisions "could be removed from the protection of the discretionary function exception" if those decisions were shown to be retaliatory or otherwise not policy driven). And like other family-separation complaints, Plaintiffs' Complaint "incorporates all facts into each count; evaluating which facts could or could not prove a claim [at the motion-to-dismiss stage] is premature." *A.P.F.*, 492 F. Supp. 3d at 996-97; *see also C.M.*, 2020 WL 1698191, at *4 (rejecting similar argument); *A.F.P.*, 2022 WL 2704570, at *13 (same); *F.R.*, 2022 WL 2905040, at *5 (same).

The DFE does not bar Plaintiffs' claims.

### C.   The Due Care Exception Does Not Apply Here.

Courts in this circuit apply the two-prong test from "*Welch v. United States* to determine whether the due care exception applies." *A.P.F.*, 492 F. Supp. 3d at 995; *see also, e.g.*, *J.P. v. United States*, 2023 WL 4237331, at \*10 (collecting cases).  Under that test, the due care exception bars FTCA claims only if (1) a statute or regulation "specifically prescribes a course of action to be followed by" an officer and (2) "the officer exercised due care in following the dictates of that statute or regulation." *Welch v. United States,* 409 F.3d 646, 652 (4th Cir. 2005).  The government bears the burden of proving that the due care exception applies.  *See Prescott v. United States*, 973 F.2d 696, 702 (9th Cir. 1992).  Here, too, Defendant fails.

1.  As it has before, Defendant cites no statute or regulation requiring it to detain parents and children in separate facilities before it has prosecuted either for a crime.  *See* Mot. 19-21; *see J.P.*, 2023 WL 4237331, at \*10 (collecting cases).    That is because no such statute or regulation exists.  The government instead separated Plaintiffs according to an *executive policy*.  *See* Compl. ¶¶ 22-59; *see also, e.g.*, *C.M.*, 2020 WL 1698191, at \*3 ("family separation was established by executive policy—not by a statute or regulation"); *accord M.S.E.*, ECF No. 53 at 8; *E.S.M.*, 2022 WL 11729644, at \*5; *B.A.D.J.*, 2022 WL 11631016; *A.P.F.*, 492 F. Supp. 3d at 996.  And as courts in this District have recognized, "[a]ctions taken pursuant to executive policy are not shielded by the due care exception." *A.P.F.*, 492 F. Supp. 3d at 996; *see also, e.g.*, *C.M.*, 2020 WL 1698191, at \*3 (same).

Because Defendant has not identified a statute or regulation requiring the conduct at issue, the due care exception does not apply.  Nearly every court in this District—as well as several others in this Circuit—has held as much.  *See, e.g.*, *M.S.E.*, ECF No. 53 at 7; *E.S.M.*, 2022 WL 11729644, at \*5; *B.A.D.J.*, 2022 WL 11631016, at \*4; *A.E.S.E. v. United States*, No. 21-cv-0569 RB-GBW, 2022 WL 4289930, at \*13-14 (D.N.M. Sept. 16, 2022); *A.F.P.*, 2022 WL 2704570, at \*15; *Wilbur P.G.*, 2022 WL 3024319, at \*5.[5]

---

[5] The lone exception is *F.R.*, which held that the child's "transfer was mandated by [the

16

1    The only statute Defendant invokes is the TVPRA.  Mot. 20-21. Defendant contends

2    that once it deemed the children unaccompanied on the ground that their parents were

3    amenable to prosecution, the TVPRA "*required* that M.C.J. and T.P.C. be transferred to

4    ORR custody."  Mot. 20-21 (emphasis added).

5    This argument fails, twice over.  First, as explained *supra* pp. 12-13, attempting to

6    sanitize the Family Separation Policy by slicing it into purportedly discrete actions ignores

7    the broader picture and Plaintiffs' allegations.  Second, Defendant's interpretation of the

8    TVPRA is faulty.  "[T]hat a statute prescribes a particular outcome at one possible step in

9    a large scheme of action does not necessarily mean that the statute prescribes an entire

10   course of action or other steps in the large scheme of action."  *M.S.E.*, ECF No. 53 at 8.

11   The TVPRA "does not require" the government to treat as unaccompanied the children of

12   parents who are referred for prosecution.  *Id.*  Defendant does not explain how a parent

13   who is merely amenable to prosecution but has not actually been prosecuted is, for that

14   reason alone, unavailable to provide care for their child—perhaps because "Congress [has]

15   rejected" using the TVPRA to "split[ ] up legitimate family groups."  *Bunikyte v. Chertoff*,

16   No. A-07-CA-164-SS, 2007 WL 1074070, *1-2 (W.D. Tex. Apr. 9, 2007); *see also supra*

17   pp. 14-15.  Nor does the TVPRA require the government to detain those parents in facilities

18   far away from their children.  *See Jacinto-Castanon de Nolasco,* 319 F. Supp. 3d at 501

19   ("[T]he fact that [a plaintiff-parent] may be subject to some form of immigration detention

20   does not explain why she must be detained separately from her sons.").

21   Defendant's TVPRA theory is easily disproven, as *M.S.E.* recently recognized.  *See*

22   ECF No. 53 at 8.  The government did not use the TVPRA to systematically separate

23   families before the Family Separation Policy.  And the government did not contend that

24   the TVPRA prevented Plaintiffs' reunification, despite the fact that the parents remained

25   amenable to prosecution.  This makes crystal clear that the only thing mandating the

26   separation of Plaintiffs was the Family Separation Policy.  And that executive policy is

27

28   TVPRA]."  2022 WL 2905040 at *4.  That is wrong. *See infra* pp. 17-18.  In any event,
     *F.R.* held that the government did not exercise due care under the second *Welch* prong.

17

1    what Plaintiffs are challenging, not the TVPRA.  Other courts in this District have rejected

2    the government's attempts to "recast" similar challenges as "challenge[s] to the

3    government's interpretation of" the TVPRA.  *A.P.F.*, 492 F. Supp. 3d at 995 n.3; *see also*

4    *C.M.*, 2020 WL 1698191, at *3 n.4; *M.S.E.*, ECF No. 53 at 8.  This Court should, too.

5          2.  Even if Plaintiffs' separations were mandated by statute or regulation—and they

6    were not—the due care exception would not apply under the second *Welch* prong because

7    the government failed to act with "due care" in carrying out the separations.  "[D]ue care"

8    under the FTCA "'implies at least some minimal concern for the rights of others.'"  *Myers*

9    *& Myers, Inc. v. U.S. Postal Serv.*, 527 F.2d 1252, 1262 (2d Cir. 1975) (quoting *Hatahley*

10   *v. United States*, 351 U.S. 173, 181 (1956)); *see Hydrogen Tech. Corp. v. United States*,

11   831 F.2d 1155, 1161 (1st Cir. 1987) (the standard for due care is "one of reasonableness").

12         The government officers' conduct flunks this low bar.  Plaintiffs were detained in

13   cramped and frigid cells.  Compl. ¶¶ 4, 72, 103-104.  For food, they were given cold soup.

14   *Id.* ¶¶ 72, 104.  They were given no clean water to drink.  *Id.* ¶¶ 4, 72.  When Plaintiffs

15   complained, officers taunted them.  *Id.* ¶¶ 72, 81, 116-117.  Worse, officers separated

16   Plaintiffs from one another in traumatic ways.  *Id.* ¶¶ 68-71, 105; *see also supra* p. 4.

17   Officers ignored Plaintiff-Parents' pleas for information about their children's

18   whereabouts.  Compl. ¶¶ 74, 109.  And when they were reunited, officers again ripped the

19   families apart, retraumatizing the children and parents.  *Id.* ¶¶ 80-96, 115-122.

20         This is not due care.  To the contrary, the government officials executing the Family

21   Separation Policy acted with the deliberate intent of humiliating and traumatizing Plaintiffs

22   in an effort to deter future migration.  So even if a statute or regulation *did* authorize

23   Plaintiffs' separations, the due care exception does not bar Plaintiffs' claims.[6]

24         Notably, Defendant does not even attempt to argue that it exercised due care when

25   it separated Plaintiffs.  Because Defendant has the burden on this point, that failure alone

26

27   [6] At the very least, whether the government exercised due care is a question of fact not
     appropriately resolved at the motion-to-dismiss stage.  *See, e.g.*, *Moher v. United States*,
     875 F. Supp. 2d 739 (W.D. Mich. 2012) (denying motion to dismiss FTCA claims because
28   factual issue existed as to whether the use of force against plaintiff was reasonable).

18

1   warrants denying its motion to dismiss.  *See Fuentes-Ortega*, 640 F. Supp. 3d at 884; *J.P.*,
2   2023 WL 4237331, at *11; *B.A.D.J.*, 2022 WL 11631016, at *4.

3   Defendant instead appears to argue that "due care" is not actually part of the due
4   care exception, and that the exception is instead satisfied merely "when a government
5   employee's actions are authorized by statute or regulation."  Mot. 19-20 (citing *Borquez v.*
6   *United States*, 773 F.2d 1050, 1052-53 (9th Cir. 1985)).   Courts in this District have
7   rejected *Borquez* in cases like this one.  For one thing, *Borquez* concerned "a challenge to
8   the statutory authority of the government" to transfer responsibility of a dam to a private
9   corporation.  *A.P.F.*, 492 F. Supp. 3d at 995 n.2 (quoting *Borquez*, 773 F.2d at 1052).  This
10  was "a type of challenge the exception was designed to prohibit."  *Id.*  "Here, Plaintiffs are
11  not challenging a statute's grant of authority to the government to separate Plaintiffs; they
12  are seeking damages for harm caused by the execution of an executive policy.  *Borquez*
13  therefore does not apply."  *Id.*  In any event, *Borquez applied* the due care standard, holding
14  that "[n]o evidence has been introduced which indicates that due care was not used in the
15  transfer to the Association."  773 F.2d at 1052.  "Thus, *Borquez* cannot support an argument
16  that due care is not relevant to the due care exception."  *M.S.E.*, ECF No. 53 at 7 n.2.[7]

17  The due care exception does not bar Plaintiffs' claims.

18  **D.    Plaintiffs' Tort Claims Satisfy The Private-Person-Analogue Inquiry.**

19  Plaintiffs' tort claims satisfy the FTCA's broad private-person-analogue
20  requirement, which provides that the United States is liable "in the same manner and to the
21  same extent as a private individual under like circumstances."  28 U.S.C. § 2674.  As the
22  Supreme Court has explained, "the words 'like circumstances' do not restrict a court's
23  inquiry to the *same circumstances*, but require it to look further afield."  *United States v.*
24  *Olson*, 546 U.S. 43, 46 (2005) (quoting *Indian Towing Co. v. United States*, 350 U.S. 61,
25  64 (1955)).  The goal is "to find the most reasonable analogy."  *Dugard v. United States*,

26

27  _____
    [7] Defendant's other cases similarly applied this exception after finding that the government
28  officials acted with due care or that the plaintiff failed to adequately plead that they did not.

835 F.3d 915, 919 (9th Cir. 2016) (quoting *LaBarge v. Mariposa Cnty.*, 798 F.2d 364, 367 (9th Cir. 1986)).  The plaintiff need not identify a private analogue that is "exactly on point." *Firebaugh Canal Water Dist. v. United States*, 712 F.3d 1296, 1303 (9th Cir. 2013).

Applying these rules, courts in this District have universally held that Plaintiffs' claims have reasonable private analogues under like circumstances.

Courts in this District have found private analogues for IIED in family-separation cases based on Arizona case law recognizing such claims where parents were separated from their children.  *See J.P.,* 2023 WL 4237331, at *4; *B.A.D.J.*, 2022 WL 11631016, at *4; *M.S.E.*, ECF No. 53 at 10; *E.C.B.*, ECF No. 24 at 5; *A.I.I.L.*, 2022 WL 992543, at *5-8; *C.M.*, 2020 WL 1698191, at *2; *E.S.M.*, 2022 WL 11729644, at *2-3; *Pankratz v. Willis*, 744 P.2d 1182, 1189 (Ariz. Ct. App. 1987) (recognizing IIED claim where one parent forcibly separated child from the other parent); *Martinez v. United States*, No. CV-13-00955-TUC-CKJ (LAB), 2018 WL 3359562, at *10-12 (D. Ariz. July 10, 2018) (same, where border patrol agents threatened to separate family during interrogation).

Courts have recognized a private analogue for negligence in this context under Arizona's civil-liability provision for private nursing-home employees, as both nursing-home employees and immigration officials "are tasked with the care and custody of those they detain, and owe detainees at least a minimal level of care." *C.M.*, 2020 WL 1698191, at *2 (citing *Estate of Smith v. Shartle*, No. CV-18-00323-TUC-RCC, 2020 WL 1158552, at *1-2 (D. Ariz. Mar. 10, 2020)); *see also B.A.D.J.*, 2022 WL 11631016, at *4; *A.I.I.L.*, 2022 WL 992543, at *6; *E.C.B.*, ECF No. 24 at 5; *E.S.M.*, 2022 WL 11729644, at *2-3.

And courts in this District have recognized that "Arizona law also awards damages for the loss of a child's consortium when a caretaker's actions cause 'significant interference with the normal relationship between parent and child.'" *A.P.F.*, 492 F. Supp. 3d at 995 (quoting *Bickler v. Senior Lifestyle Corp.*, No. CV09-00726-PHX-DGC, 2010 WL 2292985, at *6 (D. Ariz. June 8, 2010)); *see also M.S.E.*, ECF No. at 10-11; *B.A.D.J.*, 2022 WL 11631016, at *5; *E.C.B.*, ECF No. 24 at 5; *E.S.M.*, 2022 WL 11729644, at *2-3.

Defendant's assertion that no private-person analogue exists "[b]ecause only the

United States has authority to enforce federal criminal and immigration laws and make determinations concerning detention" falters at every step.  Mot. 21.  This case does not involve a circumstance in which the federal government was "enforc[ing] federal criminal and immigration laws"; it involves a case where federal officers, acting pursuant to an executive policy, separated and detained families in violation of their constitutional rights. And contrary to Defendant's suggestion, it is well settled that the United States can be held liable for actions over which the government has exclusive authority.  *See, e.g.*, *Indian Towing*, 350 U.S. at 67-68; *Tekle v. United States*, 511 F.3d 839 (9th Cir. 2007).  For good reason; because "[a]ll Government activity is inescapably 'uniquely governmental' in that it is performed by the Government," an exception insulating the government from FTCA liability for negligent performance of "uniquely governmental functions," "would threaten to swallow the" FTCA's waiver of sovereign immunity whole.  *Liranzo v. United States*, 690 F.3d 78, 94 (2d Cir. 2012) (quoting *Indian Towing*, 350 U.S. at 67).

Just as the United States can be liable for the Coast Guard's actions, *Indian Towing*, 350 U.S. at 69-70, so too can it be liable for immigration officials' actions.  For example, in *Xue Lu v. Powell*, the Ninth Circuit found private analogues for the plaintiff's IIED claim against an immigration officer who threatened to deny her asylum, unless she paid the officer money or provided him with sexual favors.  621 F.3d 944, 950 (9th Cir. 2010).  The Second Circuit in *Liranzo* likewise found a private analogue where an immigration officer erroneously detained the plaintiff for about four months.  690 F.3d at 82, 94-97.

None of Defendant's cases suggest otherwise.  Each involved quasi-adjudicative actions that private persons cannot engage in.  *See Sea Air Shuttle Corp. v. United States*, 112 F.3d 532, 536 (1st Cir. 1997) ("failure … to take enforcement action … [against] aviation facilities"); *Ryan v. ICE*, 974 F.3d 9, 26 (1st Cir. 2020) ("[c]ontrolling immigration and the presence of noncitizens"); *Elgamal v. Bernacke,* 714 F. App'x 741, 742 (9th Cir. 2018) ("negligent denial of an immigration status adjustment application"); *Elgamal v. United States,* No. 13-00967, 2015 WL 13648070, at *5 (D. Ariz. July 8, 2015) (same, and delay in reaching decision); *Bhuiyan v. United States*, 772 F. App'x 564, 565 (9th Cir.

1    2019) ("withdrawal of immigration benefits"); *Mazur v. I.N.S.*, 957 F. Supp. 1041, 1042

2    (N.D. Ill. 1997) (failure to process permanent resident application).  But this case involves

3    IIED, negligence, and loss of consortium claims stemming from Defendant's

4    unprecedented decision to separate parents and children.  As *every* court in this District has

5    recognized, private analogues exist for these claims.  Defendant's motion should be denied.

6              **E.**      **Plaintiffs Are Not Seeking Relief Against Independent Contractors For**

7                              **Plaintiff-Children's Time In ORR Custody.**

8            Defendant argues that claims brought against independent contractors working for

9    ORR related to Plaintiff-Children's time in ORR custody must be dismissed.  Mot. 22-23.

10   Plaintiffs are challenging the government's conduct in exposing the children to abuse in

11   ORR custody—not the government's role in selecting or supervising ORR contractors, or

12   the actions of independent contractors employed by ORR.  None of the claims are based

13   solely on Plaintiff-Children's detention in ORR custody or rely on a theory of vicarious

14   liability to secure relief for their time in ORR custody.  Rather, Plaintiffs' claims are based,

15   at least in part, on the government's conduct of separating parents from their children.  But

16   for that unlawful policy and government officers' tortious conduct, Plaintiff-Children

17   would not have been in ORR custody, and the harms Plaintiff-Children suffered in ORR

18   custody would not have occurred.

19           *A.P.F.* has rejected an independent-contractor argument on analogous facts.  As that

20   case explained, "Plaintiffs' causes of action … arise from the government's separation of

21   Plaintiff families," and "'[t]he independent contractor exception … has no bearing on the

22   United States' FTCA liability for its own acts.'"  492 F. Supp. 3d at 998 (quoting *Edison*

23   *v. United States*, 822 F.3d 510, 518 (9th Cir. 2016)).  Thus, "[t]o the extent the United

24   States argues that the contractors caused Plaintiffs' harm, and not the government, this

25   raises a fact-intensive issue inappropriate for resolution at this stage."  *Id.*; *accord M.S.E.*,

26   ECF No. 53 at 14-15.  *A.P.F.* also distinguished Defendant's principal authority, *Walding*

27   *v. United States*, 955 F. Supp. 2d 759 (W.D. Tex. 2013).  *See* Mot. 22-23.  The *Walding*

28   plaintiffs sued on theories of negligent supervision and vicarious liability, and their claims

were "untraceable to an overarching executive policy." *A.P.F.*, 492 F. Supp. 3d at 998.  By contrast, in *A.P.F.*, *M.S.E.*, and here, "Plaintiffs seek recovery for harm caused by the government's policy and practice of separating families." *Id.*

Because the Complaint alleges that Plaintiffs' harm in ORR custody "was proximately caused by the federal government's family-separation policy," Defendant's independent-contractor argument fails. *Id.*

**II.    Plaintiffs' Claims Survive Rule 12(b)(6).**

Under *Iqbal*, a plaintiff's complaint must merely contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  556 U.S. at 678 (citation omitted).  Plaintiffs' IIED and negligence claims clear this bar.

**A.    Plaintiffs Sufficiently Alleged That Defendant Committed IIED.**

IIED has three elements: (1) the defendant's conduct must be "extreme and outrageous;" (2) "the defendant must either intend to cause emotional distress or recklessly disregard the near certainty that such distress will result from his conduct;" and (3) the plaintiff must suffer resulting "severe emotional distress." *Citizen Publ'g Co. v. Miller*, 115 P.3d 107, 110 (Ariz. 2005).  Conduct is "extreme and outrageous" when it is "so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency and be regarded as atrocious and utterly intolerable in a civilized community." *Mintz v. Bell Atl. Sys. Leasing Int'l, Inc.*, 905 P.2d 559, 563 (Ariz. Ct. App. 1995).

Defendant does not contest that Plaintiffs sufficiently pled these elements. *See* Mot. 24-25.  Instead—for what appears to be the first time in a family-separation case in this District—Defendant avers that "there is no basis in Arizona for IIED claims arising out of a lawful arrest and detention." Mot. 24.  That novel argument is as wrong as it is dangerous.

Defendant's rule is contrary to Arizona law.  The legality of a plaintiff's arrest does not insulate a defendant against IIED claims.  Instead, when a plaintiff asserts an arrest-related IIED claim, the same standard applies "[w]hether or not the arrest was lawful": the plaintiff must "allege facts that demonstrate the arrest was 'extreme' or 'outrageous' conduct under the circumstances." *Crawford v. City of Mesa*, No. CV-13-00303-PHX-

GMS, 2014 WL 2930787, at *6 (D. Ariz. June 30, 2014).  This explains why Arizona courts do not reflexively dismiss arrest-related IIED claims after concluding that the arrest was lawful; courts consider whether the alleged conduct was sufficiently outrageous *under the facts*.  *See, e.g.*, *Rand v. City of Glendale*, No. 1 CA-CV 07-0722, 2008 WL 5383363, at *9 (Ariz. Ct. App. Dec. 26, 2008) (unpublished) (concluding that plaintiffs' arrest-based IIED claim failed based on "the facts … supported by the record"); *Allen v. Arizona Dep't of Corr.*, No. 1 CA-CV 07-0242, 2009 WL 2382026, at *4-5, 9 (Ariz. Ct. App. Aug. 4, 2009) (unpublished) (same, where "[t]he State's arrest of the plaintiff … [did] not 'go beyond all possible bounds of decency'") (citation omitted); *Ekweani v. Maricopa Cnty. Sheriff's Off.*, No. CV-08-01551-PHX-FJM, 2010 WL 2079773, at *8 (D. Ariz. May 24, 2010) (same, where "plaintiffs lack evidence of any conduct approaching [the required] threshold"); *cf. C.M.*, 2023 WL 7102132, at *13-14 (denying Plaintiff's motion for summary judgment on their IIED claim because genuine issues of material fact existed as to whether Defendant's conduct in separating families was extreme and outrageous).

Defendant's own cases make this clear.  *Savage v. Boies* (Mot. 24) concerned the torts of false arrest and negligent infliction of emotional distress (NIED).  272 P.2d 349, 351 (Ariz. 1954).  The Arizona Supreme Court held that the trial court properly directed a verdict in favor of the defendants on the false-arrest claim because the defendants arrested the plaintiff under a court order.  *Id.* at 350.  But—contrary to Defendant's suggestion— that holding did not doom the NIED claim.  Instead, the Court held that a jury could conclude that the defendant's conduct in effectuating such an arrest—lying to the plaintiff "that her seven-months-old child is in the hospital"—constituted NIED.  *Id.* at 358.  *Savage* thus stands for the exact opposite contention Defendant cites it for.  Likewise, in *Rondelli v. Pima County*, the court rejected the arrest-related IIED claim on the ground that "[t]he series of acts complained of by appellant in the setting described do not meet the criteria of extreme and outrageous conduct."  586 P.2d 1295, 1302 (Ariz. Ct. App. 1978).  The plaintiff's claim failed *on the facts*, not because it arose out of an arrest.

Given what Defendant's rule would entail, it is no surprise that Defendant fails to

cite a case for it.  According to Defendant, a lawful arrest would absolve any and all "atrocious and utterly intolerable" conduct that follows—such as, to use this case as an example, tearing a seven-year old from his father's arms and separating them for weeks to deter other migrants from seeking asylum in this country.  That is emphatically not the law, as illustrated by this District's unanimity in concluding that family-separation-based IIED claims have private analogues in Arizona.  *See supra* p. 20.

Defendant also contends that Plaintiffs' IIED claims fail because they arise out of "privileged" activities.  Mot. 25.  That argument is effectively a repackaging of Defendant's private-person-analogue argument.  It fails here for the same reason.  *See supra* at 20-22; *cf. C.D.A. v. United States*, No. CV 21-469, 2023 WL 2666064, (E.D. Pa. Mar. 28, 2023) (rejecting similar privilege argument in family-separation case governed by Texas law).  Here, too, Defendant fails to cite any Arizona law supporting its theory, and the authorities it does cite are misplaced.  Government officials' conduct in separating Plaintiffs from one another was not "insist[ing] upon [their] legal rights in a permissible way," Restatement (Second) of Torts § 46, comment g; or akin to an employer firing an employee, *contra Mintz*, 905 P.2d at 563; *Learner v. John Hancock Life Ins. Co.*, No. CV-09-01933-PHX-ROS, 2011 WL 13185713, at *3 (D. Ariz. Mar. 21, 2011).  *Caban v. United States* discussed privilege in the context of determining whether an immigration-related false-imprisonment claim had a New York private-person analogue; making the case more irrelevant, "immigrations officers are accorded a special status by law which requires them to detain persons in situations also outlined by law."  728 F.2d 68, 74  (2d Cir. 1984).  And *S.E.B.M. v. United States* discussed Defendant's privilege in the context of determining whether the plaintiff's IIED claim had a *New Mexico* state-law analogue.  No. 1:21-CV-00095-JHR-LF, 2023 WL 2383784, at *8 (D.N.M. Mar. 6, 2023).  Plaintiffs have stated an IIED claim.

### B.   Plaintiffs Sufficiently Alleged That Defendant Was Negligent.

An Arizona negligence claim has four elements: duty, breach, causation, and damages.  *See Gipson v. Kasey*, 150 P.3d 228, 230 (Ariz. 2007).  Defendant's arguments

1   as to why Plaintiffs insufficiently pled those elements are unavailing.

2          Defendant first argues that Plaintiffs failed to identify the source of Arizona law

3   imposing a duty on federal officers to act with ordinary care.  Mot. at 27.  This argument

4   fails for the same reasons Defendant's identical argument in *J.P.* failed.

5          In Arizona negligence law, a duty can be based on "relationships" created by "the

6   common law," which the Arizona Supreme Court defines as "case law or Restatement

7   sections consistent with Arizona law."  *Quiroz v. ALCOA Inc.*, 416 P.3d 824, 827 (Ariz.

8   2018).  And under Arizona common law, a person has a duty to another when he "takes

9   the custody of [that other person] under circumstances such as to deprive the other of his

10  normal opportunities for protection."  *DeMontiney v. Desert Manor Convalescent Ctr. Inc.*,

11  695 P.2d 255, 260 (Ariz. 1985) (quoting Restatement (Second) of Torts § 314A)); *see also*

12  *Gilbert v. La Paz Cnty.*, No. CV 18-01792-PHC-DCG (DMF), 2020 WL 2064099, at *13

13  (D. Ariz. Apr. 29, 2020) (Arizona law recognizes a duty arising from "special relationships

14  such as guardian-ward and jailer-prisoner").  Pointing to similar cases, *C.M.* recently held

15  that, "[l]ike a jailor-prisoner relationship, federal immigration officials owe a duty of care

16  to noncitizens that they detain and hold in custody."  2023 WL 7102132, at *15.

17         In *J.P.*, the court found that the plaintiffs sufficiently pled the existence of that duty

18  by "alleg[ing] that DHS employees were 'responsible for supervising and managing

19  detained individuals at CBP and ICE facilities, including the facilities where [the plaintiffs]

20  were detained and separated."  2023 WL 4237331, at *12 (quotation marks and citation

21  omitted).

22         Here, Plaintiffs' Complaint contains the *exact same allegation*.  "DHS employees

23  are also responsible for supervising and managing detained individuals at CBP and ICE

24  facilities, including the facilities where Plaintiffs were detained before and at the time of

25  their separations, and where O.P.V. and P.C.J. were detained during the course of their

26  separations from their children."  Compl. ¶ 17.  Plaintiffs alleged a similar duty as to HHS

27  employees, who Plaintiffs alleged to be "responsible for supervising and managing the

28  detention of children the government classifies as unaccompanied, including the facilities

where T.P.C. and M.C.J. were detained while they were separated from their parents." *Id.*

¶ 18.  As in *J.P.*, these allegations sufficiently identify the source of the duty—Defendant's

detention of Plaintiffs—and they are therefore sufficient.[8]

Defendant next complains that Plaintiffs failed to identify the "particular federal

employee[s]" who were negligent.  This is yet another reprisal, this time of Defendant's

systemic-tort argument.  *See supra* pp. 6-8.  This argument fares no better here.  A

complaint "need only give the defendant fair notice of what the … claim is and the grounds

upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007).  "Specific facts are not

necessary." *Id.*  Plaintiffs' Complaint meets this bar.  Defendant is on "fair notice" that the

specific officers involved in Plaintiffs' separations and detentions—the names of whom

are currently unknown to Plaintiffs because they have not had the benefit of discovery—

were negligent.  *See supra* p. 8.  As *J.P.* explained when rejecting this identical argument,

"the United States' pre-discovery complaints about Plaintiffs' inability to name the specific

actors is premature." 2023 WL 4237331, at *12.

Finally, Defendant asserts that the "Complaint … does not identify the specific

conduct that Plaintiffs claim to have been negligent." Mot. 26.  That is meritless.  Unlike

the complaints in the Defendant's cited cases, the one at issue here recounts with specificity

the numerous ways Defendant failed to satisfy its duty of ordinary care. *See supra* pp. 4-

5, 7, 19; *see also* Compl. ¶¶ 67-96, 103-122.  All of these allegations were incorporated

into the negligence claim. *See* Compl. ¶ 138.  These allegations are more than sufficient

to put Defendant on notice of the specific conduct Plaintiffs allege to be negligent.

## CONCLUSION

For the foregoing reasons, the Court should deny Defendant's motion.

RESPECTFULLY SUBMITTED this 6th day of November, 2023.

HOGAN LOVELLS US LLP

By:  *s/Michael J. West*

---

[8] *Delta Savings Bank v. United States*, 265 F.3d 1017 (9th Cir. 2001) (Mot. 26), is
inapposite for all the reasons explained in *J.P.*  *See* 2023 WL 4237331, at *12 n.15.

Justin W. Bernick*
Danielle Desaulniers Stempel*
Michael J. West*
Alicia Paller*
Dana A. Raphael*
Melissa Giangrande*
HOGAN LOVELLS US LLP
Columbia Square
555 Thirteenth Street, NW
Washington, DC 20004

David A. Willner*
HOGAN LOVELLS US LLP
2 North Cascade Ave, Suite 1300
Colorado Springs, CO 80903

Javier Hidalgo*
RAICES
1305 N. Flores Street
San Antonio, TX 78212

Allison Whitehill (036339)
Todd Feltus (0109076)
Katie Derrig (037110)
LEWIS ROCA ROTHGERBER CHRISTIE LLP
201 East Washington Street, Suite 1200
Phoenix, AZ 85004

*Attorneys for Plaintiffs*

*(*Admitted pro hac vice)*

**CERTIFICATE OF SERVICE**

I hereby certify that on November 6, 2023, the foregoing was electronically transmitted to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants in this case:

Gary M. Restaino
United States Attorney
District of Arizona

Lisa M. Hemann
Assistant U.S. Attorney
Arizona State Bar No. 024703
Javier Torres
Assistant U.S. Attorney
Arizona State Bar No. 032397
Two Renaissance Square
40 North Central Avenue, Suite 1800
Phoenix, Arizona 85004-4449
Telephone:  (602) 514-7500
Civil Fax:  (602) 514-7760
Main Fax: (602) 514-7693
Lisa.Hemann@usdoj.gov
Javier.Torres@usdoj.gov
*Attorneys for Defendant*

Attorneys for Plaintiffs

*s/Michael J. West*